******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ELIANA NASSRA *v.* GEORGE A. NASSRA
(AC 36591)

DiPentima, C. J., and Alvord and Bishop, Js.

*Argued March 10—officially released June 16, 2015*

(Appeal from Superior Court, judicial district of
Fairfield, Frankel, J. [dissolution judgment]; Hon.
Howard T. Owens, Jr., judge trial referee [motion for
contempt])

*Christopher DeMarco*, for the appellant (plaintiff).

*Thomas J. Weihing*, with whom, on the brief, was
*Dana P. Lonergan*, for the appellee (defendant).

*Opinion*

ALVORD, J. The plaintiff, Eliana Nassra,[1] appeals from the trial court's denial of her postjudgment motion for contempt, in which she claimed that the defendant, George A. Nassra, wilfully failed to comply with a provision of the separation agreement that had been incorporated into their dissolution judgment. On appeal, the plaintiff claims that the court's failure to enforce the defendant's obligation to pay "the full amount" of real estate taxes on the former marital property impermissibly modified a nonmodifiable property distribution. We disagree and, accordingly, affirm the judgment of the trial court.

The following facts and procedural history are relevant to this appeal. The plaintiff and the defendant were married on July 4, 1993, in Tripoli, Lebanon. On November 9, 2010, the court, *Frankel, J.*, dissolved the marriage and incorporated the terms of the parties' separation agreement and parental responsibility plan for their two minor children into the dissolution judgment. See *Nassra* v. *Nassra*, 139 Conn. App. 661, 663, 56 A.3d 970 (2012). Paragraph 6.7 of the separation agreement, which is the provision at issue in this appeal, provides in relevant part: "The [defendant] is the owner of a [life insurance policy] with a cash surrender value of $67,995.53. The following [obligation] shall be paid out of the cash surrender value . . . the sum of . . . $30,286[2] to the Town of Stratford [town] for outstanding real estate taxes on the Marital Residence. . . ."

On November 29, 2010, the defendant paid the town $23,814.73, which represented payment of taxes in full for the 2008 grand list year[3] and payment of taxes for the first half of the 2009 grand list year. The next payment of taxes, due in January, 2011, would be for the second half of the 2009 grand list year. The January, 2011 payment was not timely made. On January 19, 2011, the plaintiff filed a postjudgment motion for contempt, claiming, inter alia, that "there is a balance due and owing for outstanding real estate taxes in the amount of $6478.81, plus interest to date" and that the defendant "has wilfully and intentionally violated the terms of the Separation Agreement because [he] has failed to pay the amount due and owing to the [town] as set forth in the Agreement."

The court did not rule on that motion because, at a hearing scheduled on February 24, 2011, the parties advised the court that the issue of the real estate taxes had been resolved. As set forth in a letter from the plaintiff's counsel to the defendant's counsel dated February 18, 2011, the parties had discussed and agreed that if there was a zero balance due on the 2010 property taxes, the extra amount set aside was to be transferred to Dr. David Israel to be applied to his "long overdue bill" for counseling services provided to the parties'

children. The defendant's counsel subsequently mailed a trustee's check in the amount of $7494.20 to Dr. Israel.

On October 5, 2012, the plaintiff filed another postjudgment motion for contempt that again claimed that the defendant wilfully violated paragraph 6.7 of the separation agreement by failing to pay the outstanding real estate taxes on the former marital residence. In that motion, the plaintiff sought "an order of willful contempt" and additionally sought "the defendant's incarceration until such time as all sums due and payable under Paragraph 6.7 have been paid to the Town of Stratford." A hearing was held on August 22, 2013, at which time the parties submitted exhibits and presented the testimony of witnesses, including the town's tax collector. The parties filed posthearing briefs in September, 2013.

The court issued its memorandum of decision on January 9, 2014. After referencing the applicable sections of the parties' separation agreement, the court quoted from the transcript of the dissolution proceeding. In the dissolution proceeding on November 9, 2010, the plaintiff affirmed that she was to have exclusive use and occupancy of the former marital residence and was to "be responsible for the taxes, assessments, insurance and utilities." She further affirmed that the defendant was to make a payment to the town "to cover the outstanding real estate taxes that are due and owing" on the former marital residence. The court noted in its decision the amount the defendant paid the town, the fact that a motion for contempt on this same issue previously was filed by the plaintiff, and the parties' representation to the court on February 24, 2011, that the real estate tax issue had been resolved. The court further stated that the tax collector's testimony, as acknowledged by the plaintiff, confirmed that the defendant could not have paid any additional real estate taxes when he made the November 29, 2010 payment because the next tax bill would not be generated until January, 2011. On the basis of the foregoing, the court determined that the language of paragraph 6.7 was clear and unambiguous with respect to the defendant's obligation to pay "outstanding real estate taxes," and that the plaintiff clearly understood the meaning of that language at the time the dissolution judgment was rendered. Accordingly, the court concluded that the defendant had not violated paragraph 6.7 of the separation agreement and denied the plaintiff's postjudgment motion for contempt. This appeal followed.

"A finding of contempt is a question of fact, and our standard of review is to determine whether the court abused its discretion in failing to find that the actions or inactions of the [defendant] were in contempt of a court order." (Internal quotation marks omitted.) *Auerbach* v. *Auerbach*, 113 Conn. App. 318, 326, 966 A.2d 292, cert. denied, 292 Conn. 901, 971 A.2d 40 (2009).

The order at issue is the parties' separation agreement, which was incorporated into the court's judgment. "It is well established that a separation agreement that has been incorporated into a dissolution decree and its resulting judgment must be regarded as a contract and construed in accordance with the general principles governing contracts. . . . When construing a contract, we seek to determine the intent of the parties from the language used interpreted *in the light of the situation of the parties and the circumstances connected with the transaction.* . . . [T]he intent of the parties is to be ascertained by a fair and reasonable construction of the written words and . . . the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract. . . . When only one interpretation of a contract is possible, the court need not look outside the four corners of the contract. . . . Extrinsic evidence is always admissible, however, to explain an ambiguity appearing in the instrument. . . . When the language of a contract is ambiguous, the determination of the parties' intent is a question of fact. . . . When the language is clear and unambiguous, however, the contract must be given effect according to its terms, and the determination of the parties' intent is a question of law." (Emphasis in original; internal quotation marks omitted.) *Parisi* v. *Parisi*, 315 Conn. 370, 383, 107 A.3d 920 (2015).

The parties and the trial court agreed that the language in paragraph 6.7 of the separation agreement was clear and unambiguous. The defendant was obligated to pay the "outstanding real estate taxes" on the former marital residence as of November 9, 2010, which was the date of the dissolution judgment.[4] The plaintiff was obligated to pay the taxes, assessments, insurance and utilities thereafter, because she had been awarded the exclusive use and possession of the former marital residence. By paying the town $23,814.73 on November 29, 2010, the defendant paid all taxes due and payable through December 31, 2010. The next payment of taxes was not due until January, 2011, which would cover the period of January 1, 2011 through June 30, 2011. The tax bill had not yet been generated for the January, 2011 payment at the time the defendant made his payment on November 29, 2010. The tax collector, at the August 22, 2013 hearing, testified that the defendant's November 29, 2010 payment "covered till December 31, 2010," so that "[e]verything was current on that property" and "[t]here was nothing outstanding at that time."

Bonnie Amendola, who was the plaintiff's counsel at the time the judgment of dissolution was rendered, also testified at the August 22, 2013 hearing. She further confirmed the clear and unambiguous language of the separation agreement: "What I'm saying is that my understanding was [the plaintiff] was to receive the

property with no taxes due and owing as of the date of dissolution.'' The testimony of the tax collector made it clear that, as of November 29, 2010, no outstanding taxes were due and owing on the former marital residence. The taxes were current at that time, and the defendant, therefore, had complied with paragraph 6.7 of the separation agreement. Accordingly, the court did not abuse its discretion in denying the plaintiff's postjudgment motion for contempt, and said denial did not impermissibly modify a nonmodifiable property distribution.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The plaintiff is now known as Eliana Kouchary.

[2] The amount of $30,286 was a good faith estimate of what the parties believed to be the amount of real estate taxes due as of November 9, 2010. The parties did not have the current tax bill at the time of the dissolution judgment.

[3] The town's tax collector provided the following information. The subject property was assessed in October, 2008, for the 2008 grand list year. Payment of taxes for the 2008 grand list year would be due in July, 2009, and January, 2010. The July payment would cover the period of time from July 1, 2009, through December 31, 2009. The January payment would cover the period of time from January 1, 2010, through June 30, 2010.

The subject property was assessed in October, 2009, for the 2009 grand list year. Payment of taxes for the 2009 grand list year would be due in July, 2010, and January, 2011. The July payment would cover the period of time from July 1, 2010, through December 31, 2010. The January payment would cover the period of time from January 1, 2011, through June 30, 2011.

[4] We note that the plaintiff's financial affidavit, filed with the court on November 9, 2010, listed an "amount due" of $21,608.97 to the "Town of Stratford" under "Liabilities."